6 | 307
90 | 310

# McLellan, *adm'r vs.* Crofton, *Ex'r.*

The total omission, or the smallness of the *ad damnum* in a writ, cannot properly be considered as merely a *circumstantial* error, within the *Stat.* 1821, *ch.* 59, *sec.* 16, after the rendition of judgment. But until judgment it may be so considered. And therefore where no damages had been laid in the writ, the plaintiff, after verdict and before judgment, may have leave to amend by inserting a sufficient sum.

An objection to a juror because he is related to a party interested in the cause, must be made by way of challenge. After verdict it comes too late.

To prove a charge of $15 for that sum paid for the note of the defendant's testator to a third person, the charge having been made more than twenty years, and all the parties being dead ; it was held that the books of the plaintiff's intestate containing the charge, together with the note found among his papers, with the payee's receipt of payment by the plaintiff's intestate on the back of it, were competent evidence from which the jury might properly infer the fact of payment ; it also appearing by unobjectionable proof, that the plaintiff's intestate had been in the practice of paying small sums for the defendant's testator.

A paper book in the handwriting of the defendant's testator, containing accounts between himself and the plaintiff's intestate, being found among the intestate's papers, though mutilated and torn ; it was held to be competent evidence to the jury, as admissions of the defendant's testator against himself ; and that the plaintiff was not bound at his peril to account for the mutilations ; nor were the jury bound to infer that the parts missing contained any settlement of the accounts ; but that the whole was open to their consideration, to be weighed with the other evidence in the case.

Where an account of more than six years standing appeared footed on the books of the plaintiff's intestate, and the balance carried to new account, and interest claimed thereon ; it was held that the jury were not therefore bound to regard this as conclusive evidence of an account then liquidated and stated, so as to enable the statute of limitations to attach to it ; but that they were at liberty, if they were so satisfied by the evidence, to treat it as the act of the creditor alone, and of no effect.

A promissory note given by the maker and accepted by the payee in satisfaction of a book debt due from a third person, and with his consent, is a discharge of such debt ; and the liability thus incurred by the maker of the note, forms a good ground of action against the party relieved, to recover the amount of the debt, though the note has not been paid.

The lapse of twenty years is not conclusive evidence of the payment of a debt, at common law ; but is merely a presumption, liable, like all others, to be repelled by the circumstances of the case.

McLellan *v.* Crofton.

Where, to a plea of the statute of limitations, the plaintiff replies that the accounts were merchant's accounts; and the defendant rejoins that the accounts between the parties were not open and current, but were liquidated and closed more than six years before action brought; which the plaintiff traverses; the issue is substantially framed not on the replication, but on the rejoinder; and therefore the burden of proof is not on the plaintiff, to show that the accounts continued open; but on the defendant, to show that they were liquidated and closed.

"Stated" or "liquidated accounts" are those which have been examined and adjusted by the parties; and where a balance due from one of them has been ascertained and agreed on as correct.

In the case of merchant's accounts, the death of one or both the parties has no operation on the accounts, by way of causing the statute of limitations to attach to them.

Neither has the cessation of dealings between the parties for more than six years, any such operation.

This was an action of *indebitatus assumpsit*, on promises alleged to have been made by *James Dunn* the defendant's testator, to *William Waite* the plaintiff's intestate, for the goods, &c. mentioned in the schedule annexed to the writ. This schedule appeared to be a transcript from *Waite's* book, being charges of sundry items accruing from *March* 7, 1795 to *Aug.* 15, 1801, at which time the account was footed by *Waite* and the balance carried to new account.

The defendant pleaded, *first,* the general issue, which was joined : secondly, *non assumpsit infra sex annos ;* thirdly, *actio non accrevit infra sex annos ; fourthly,* that from and after *Oct.* 28, 1799, mentioned in the plaintiff's declaration, being the time when the last charge but one was made on the schedule annexed, and probably intended to refer to the settlement of the accounts of the ship *George,* hereafter mentioned, more than six years had elapsed ; and *fifthly,* that the suit was not commenced within six years next after the cause of action set forth by the plaintiff, if any existed.

To the second, and following pleas, the plaintiff made the general replication of merchant's accounts. The defendant rejoined that at the time of the plaintiff's action there were no open and running accounts between the plaintiff's intestate and the defendant's testator; but that all accounts, concerns and transactions between them were liquidated and closed at the time of, and more than six years before, the commencement of the action.

The plaintiff surrejoined that the accounts, promises and causes of action accruing between said *Waite* and *Dunn* as merchants, and concerning the trade of merchandize, were open and running on the fifteenth day of *August* 1801 ; that *Dunn* removed out of the Commonwealth of Massachusetss, and continued absent till his death in 1805; that *Waite* died *Nov.* 9, 1805, and no administration was taken out on his estate till *Feb.* 19, 1822 ; that the will of *Dunn* was not filed, and letters testamentary granted, till *June* 6, 1826; and that said accounts have always remained open and unsettled ; and concluded with a traverse of the rejoinder, that the same were liquidated and closed at the time of, and for more than six years before, the commencement of the plaintiff's action.

On this traverse issue was taken and joined ; and the cause was tried before the Chief Justice on both the issues.

The plaintiff offered in evidence certain account books proved to have belonged to *Waite* ; being his day-books, the entries in which were mostly in his hand writing, and his legers, in which were many entries proved to be in the hand writing of *Dunn*, the last of which was dated *April* 25, 1796 ; as competent evidence to prove such charges as might have been substantiated in this manner by the suppletory oath of the party, if living. To the admission of this evidence the defendant objected ; but the objection was overruled, and the books admitted.

Among other entries on the books, copied into the schedule, was the following :—" *Oct.* 28, 1799. For cash paid *John Waite*, Esq. per receipt of yours taken up this day, $15." The exhibition of the book in support of this charge was objected to. To support the charge, the plaintiff produced a promissory note signed by *Dunn*, payable to *John Waite*, with a sum of fifteen dollars indorsed thereon in his hand writing, as received from *William Waite*. This evidence was objected to, as inadmissible to support this item of charge. But both these objections were overruled, and the charge, accompanied by the note and the receipt thereon, were admitted to be read ; though the charge alone was not admitted as legal evidence ; but all together being competent for the jury to consider, as furnishing a degree of presumptive proof ; all the parties to the transaction being dead, and

the papers being in the hands of the administrator, and by him produced.

Certain account books of the original entries and charges of *Waite* against the owners of the ship *George*, the owners being himself, *James Dunn* and *Francis Waite*, were also offered by the plaintiff to support a charge in the account-book of *Waite* against *Dunn* of $698,49, as the balance of the ship *George's* account adjusted by *Waite* and *Dunn*, *Oct.* 4, 1799. The admission of these books as evidence was objected to; but they were admitted for the purpose proposed, so far as they contained charges in the hand writing of *Dunn*, on the ground of their being admissions on his part; but no farther, nor for any other purpose. It appeared by the plaintiff's testimony, that this ship was captured by the Spaniards, and condemned, in 1797.

The plaintiff also produced in evidence a paper book in the hand-writing of *Dunn*, containing mutual accounts of debt and credit between himself and *Waite*, and between himself and the owners of the ship *George*, and between each of the owners and the ship; the last entries therein being dated *Feb.* 26, 1798; and the balances for and against each of the owners being therein carried to their respective private accounts; and being also brought into private account between *Dunn* and *Waite*; offering the book as evidence of the admission of *Dunn* of the truth of the entries therein contained in favor of *Waite*. It was hereupon insisted by the counsel for the defendant that the book of accounts was to be taken together, if considered by the jury at all; and that those parts and entries which went in discharge of *Dunn*, and to reduce the balance against him, were entitled to equal weight and credit with those which went to charge him. And the Chief Justice instructed the jury that they were to examine this book for themselves, and draw their own conclusions from the facts and statements it contained, and the debts and credits it exhibited; and that, like any other evidence laid before them, it was a subject for their consideration.

It was likewise contended by the defendant's counsel, that this paper book was a statement or duplicate of various accounts between said *Dunn* and *Waite*, drawn off by *Dunn*, and shewing all

McLellan *v.* Crofton.

their accounts; as it was described by the Plaintiff's counsel on producing it; and that it was in fact, an account stated between the parties subsequent to the loss of the ship *George*, as appeared by the last dates therein; and requested the Chief Justice so to instruct the jury. But this he declined; and left it as a fact for the jury to decide whether it was an account so stated.

And it was also contended by the defendant's counsel, that inasmuch as said book was produced by the plaintiff, and had been in his possession and the possession of *William Waite*, or other persons in interest, and as it appeared on inspection, that leaves and part of leaves, once belonging to, and constituting parts of said paper book were by some means torn and removed therefrom; it was incumbent on the plaintiff to account for, or explain the loss; and that not being otherwise accounted for or explained, it was evidence either that such portions were fraudulently removed, or that they were lost by time and accident; and that the jury might presume, in the absence of such explaining evidence, that if the book had been entire, and especially the whole of the last leaf preserved, it would shew a settlement and liquidation and close of all accounts between *Dunn* and *Waite*, including those of the ship *George*. And the Chief Justice was so requested to instruct the jury. On this head he instructed them, that it was a common principle that fraud was not to be presumed; and that there was no direct proof in the case that any of the leaves, or parts of leaves, of the book had been removed or torn off by design, or with a fraudulent intention. If any proof existed of the fact supposed, it must result from inspection of the book itself. That they would therefore examine the book carefully, with this view; and also to ascertain whether the leaves had been lost by time and accident. That they would also examine and see if the book did not furnish some proof that no such settlement had been made on the last leaf, as suggested, inasmuch as the charges and credits on the page in question, and the page opposite, had never even been footed. That the whole was a question of presumption, and exclusively within their province.

The defendant's counsel also contended that the statement of the account of *William Waite* with the ship *George*, and the charge of

balance to *James Dunn* in *Waite's* account, *Oct.* 4, 1799, was evidence of an account stated by *Waite* at that time ; and requested the Chief Justice so to instruct the jury.   His instructions to them were, that the statement of the account referred to, certainly was evidence in the case ; but whether it was evidence proving any account stated, liquidated and closed by and between *Waite* and *Dunn,* was a fact for them to decide,  on examination of the whole evidence relating to that point.

The defendant's counsel also contended that the account annexed to the Plaintiff's writ exhibited, and was in form and fact an account stated *Aug.* 15, 1801 ; and requested the Chief Justice so to instruct the jury ; which he declined, for the reasons given in the last instruction.

It was proved by the defendant that the will of *James Dunn* was allowed and approved in the Prerogative Court of *Ireland* in *Dec.* 1805 ; and it was contended by his counsel, that all dealings having ceased between the parties for six years before their decease, it might be presumed that the accounts of *Waite* and *Dunn* had been stated and rendered ; and that the death of those parties was a closing of all accounts between them, and equivalent, in legal effect and contemplation, to an account stated.   On this head the Chief Justice instructed the jury that the law did not seem to have been settled in *England,* New York, Massachusetts or this State ; and that he was not prepared to say whether a cessation of dealings between merchant and merchant for more than six years next before the commencement of the action, or the death of both or one of the original parties, was equivalent to an adjustment of accounts between such parties, and should subject the accounts, so adjusted to the operation of the statute of limitations ; nor did he deem it necessary to give any definite opinion on those points, because the form of the issue rendered it unnecessary.   That the single point in issue upon the special pleas was, whether the accounts in question had been liquidated and closed more than six years before the commencement of the action ; that the words " liquidated and closed," implied the operation of the minds of the original parties on the subject—a thing very different from the death of either of them, or the mere cessation of

dealings ; and that the affirmative was on the defendant,to satisfy them, that the accounts had been liquidated and closed, as he had affirmed in the pleadings.

The defendant's counsel also contended that each and all of these circumstances, viz. the statement of accounts in the paper book of *James Dunn* to *Feb.* 26, 1798 ; the charge of balance by *Waite* to *Dunn* on adjustment of ship *George's* accounts *Oct.* 4, 1799 ; the statement of account as annexed to the writ, and balance struck *Aug.* 15, 1801 ; and the decease of each of the parties at the end of the year 1805 ; were evidence in support of the issue on the second, third, fourth and fifth pleas ; that the death of the parties in law closed the accounts previously existing, which were no longer open and running, and that the jury ought therefore to find the second issue for the defendant. On these several points thus collectively considered, the Chief Justice referred the jury to his instructions upon each of them separately as before stated.

The last item of the charge in the account annexed was a sum of money paid to *Pierson & Thatcher*, *Aug.* 15, 1801. It appeared by the books of said firm that the original charge was duly made against *Dunn* ; and from the testimony of *George Pierson*, the surviving partner, it appeared that at the request of *Waite* the amount of the charge was transferred to his account with *Pierson & Thatcher*, and a corresponding credit of the amount entered to the account of *Dunn*, in these terms, viz. " By carried to the account of *William Waite*, which when paid is in full of this account." *Pierson* also testified that *Dunn* had once or twice, some time previous, referred him to *Waite* for settlement of some small accounts ; but that he had no particular direction from *Dunn* respecting this account ; that *Waite* afterwards gave his promissory note for the amount, to the assignees of *Pierson & Thatcher*, who became bankrupts ; but that the note was not negociable, and was never paid by *Waite*.

On this evidence the defendant's counsel contended that the assumption of *Waite* to pay this demand for *Dunn* was officious ; that the circumstances proved did not amount to payment, nor shew a discharge of *Dunn* ; and that the charge for money paid *Pierson & Thatcher* could not be sustained. But the Chief Justice instructed

40

the jury that if they should believe that the assignees of *Pierson &*
*Thatcher* accepted the note in full satisfaction of the debt originally
charged against *Dunn,* and transferred and charged to *Waite,* and
that the transfer of the charge was made by the request or assent of
*Dunn,* expressed or implied, then they were authorised to consider
the debt so transferred and assumed by *Waite* and secured, as paid,
in respect to *Dunn* ; and that the plaintiff had a right to recover that
amount in this action, though the note had never been paid ; and that
they would judge whether there was evidence of the implied assent
to the above arrangement on the part of *Dunn,* arising from the tes-
timony, or from the circumstance of *Waite's* paying debts for *Dunn,*
such as are charged in the account sued.

On the general issue, the defendant's counsel also contended, that
from the lapse of time since all dealings ceased between the said par-
ties, who died more than twenty years before the commencement of
the action, the jury were bound or warranted to presume payment
and discharge. But the Chief Justice instructed them that though,
after the lapse of twenty years, a bond, note or account, was presumed
to be paid, yet such presumption might be repelled by facts and ex-
planatory circumstances, such as payment of interest, acknowledg-
ment of the debt, &c. That it was the practice of the courts to de-
duct eight years in the computation, on account of the revolution-
ary war ; that the mere poverty of a debtor was not sufficient to con-
trol the presumption, where the parties lived in the same state or
country ; but that where a debtor was abroad in a foreign country
for twenty years, that fact rebutted the presumption ; that the sub-
ject was for the consideration of the jury ; that according to the evi-
dence *Dunn* left the state of Massachusetts and this country in the
fall of 1799, and returned to Ireland, where he continued till his death
in 1805 ; and that he was poor when he went away.

The defendant's counsel also contended that interest was not al-
lowable on an account stated ; that the interest account could not be
supported ; that no interest could accrue after the death of *Waite* un-
til demand made by his administrator ; and that the parties were not
accustomed to charge interest, in the settlement of accounts. But
the Chief Justice instructed the jury that if they were satisfied, from

McLellan *v.* Crofton.

the evidence of certain merchants who testified to that effect, that it was a custom among merchants to charge interest, and that *Waite* and *Dunn* adopted the usage, they might allow it on the account, excluding the period intervening between the death of *Waite*, till the appointment of an administrator.

To which rulings and directions of the Chief Justice the counsel for the defendant filed exceptions, as by law provided ; the jury having found a verdict for the plaintiff, for $2031,96.

After verdict the defendant filed a motion for a new trial, on the ground that *Nathan Winslow*, one of the jurors, was son-in-law to *Samuel F. Hussey*, one of the principal creditors of *Waite*, whose claim had been allowed by the commissioners on his estate ; and that this fact was not known to, or not recollected by the defendant, his agent, or attornies, till near the close of the argument to the jury on the part of the plaintiff ; after which, and before the cause was committed to the jury, the counsel for the defendant stated the fact to the Judge, who replied that the objection, if valid, could not then be made, but might be offered after verdict.

In support of this motion, *C. S. Davies*, Esq. of counsel for the defendant made affidavit that he had no recollection of the circumstance that *Hussey* had any interest in the event of the suit, till the trial of the cause was considerably advanced, when it was mentioned to him that *Hussey* sitting near the jury box, had been speaking to *Winslow* ;—that he had not then any knowledge of their alliance, but knew they were members of the society of Friends ; that he did not suspect the fact till it was mentioned to him immediately before it was communicated to the court ; but that he might formerly have heard that *Winslow* had married a daughter of *Hussey*.

*Samuel Fessenden*, Esq. also of counsel for the defendant, made affidavit that he had no knowledge that *Hussey* was a creditor of *Waite's* estate till near the close of the argument for the plaintiff, to the best of his recollection.

The counsel for the plaintiff, by way of objection to the motion, filed the affidavit of *Stephen Longfellow*, Esq. one of said counsel, stating that at the trial of this cause in the court below, *Hussey* was offered as a witness for the plaintiff ; that he was objected to by the

counsel for the defendant, on the ground of his interest in the suit as a creditor of *Waite* ; and that for this cause he was rejected by the court as incompetent to testify. They also filed the affidavit of *Winslow*, stating he did not know, till after verdict, that *Hussey* was a creditor, in his own right, to the estate of *Waite*. *Winslow*, on further examination, testified that he was present at the trial in the court below, and heard *Hussey* state something about his having a demand against *Dunn's* estate as agent for some person or persons ; but that he knew nothing about the facts till after the verdict was returned at the present term. *Hussey* also testified to his having been offered as a witness in the court below, and excluded on the ground of interest ; and further stated that since that trial he had distinctly informed *Joseph T. Sherwood*, the defendant's agent, who was present at the trial, and had also stated to one of the defendant's counsel, that he was a creditor to *Waite's* estate.

It being discovered after verdict that the blank in the writ which was left for the amount of the *ad damnum* had never been filled ; the counsel for the plaintiff moved for leave to amend it by inserting a sum sufficient to cover the amount of the verdict ; which the defendant strenuously opposed.

Both these motions, together with the points raised by the exceptions, stood over for argument before all the Judges.

*Fessenden, Davies* and *Deblois* argued for the defendant, to the following effect.

The first question is whether merchants' accounts are, in any case, within the statute of limitations. The provisions of the English statute on this subject have been substantially copied into those of our own State, New York, Massachusetts, and others ; and the decisions upon them are generally in unison. In New York, the exception of merchants' accounts, in the statute of that state, has been confined to open and current accounts only, and not to accounts stated, or, in the words of the rejoinder, " liquidated and closed." *Ramchander v. Hammond*, 2 *Johns.* 200. So is the doctrine stated in 2 *Stark. Ev.* 900, *note a.* The leading case at law on this question, is, *Webber v. Tivill*, 2 *Saund.* 124, which is to the same point, and seems

never to have been shaken. And the rule is the same in equity, as at law. It was held in an early case in chancery that the statute was no bar to an open account, though it was considered as applying to every other ; *Scudemore v. White*, 1 *Vern*. 456 ; and again that only open accounts were saved by the exception ; but the case most frequently and respectfully resorted to as settling the principle, is that of *Welford v. Liddel*, 2 *Ves*. 400, where Ld. *Hardwicke* held that the defendant might plead the statute in all cases where the account is closed and concluded between the parties, and the dealings and transactions over. 2 *Saund*. 127 *a* ; *Coster v. Murray*, 5 *Johns. Chan. Rep*. 527 ; 3 *Pick*. 112 ; *Martin v. Heathcote*, 2 *Eden* 169 ; 1 *Mad. Chan*. 98 ; *Foster v. Hodgson*, 19 *Ves*. 133. It is difficult to discover any sensible or material distinction between the decisions which have been made on merchant's accounts, and those on mutual accounts ; and they seem to have been placed on the same footing by the decided cases. 19 *Ves*. 182 ; *Cotes v. Harris, Bull. N. P.* 349 ; *Cranch v. Kirkman, Peake's N. P.* 121 ; 5 *Johns. Ch. Rep*. 524 ; *Catling v. Skoulding*, 6 *D. & E.* 193. In this last case there is an *obiter dictum* of Ld. *Kenyon*, importing that merchants' accounts are not within the statute, even though there had been no dealing of any kind within six years ; but this remark was regarded by Chancellor *Kent* as extra-judicial, the case showing credits on each side within six years. 5 *Johns. Ch. Rep*. 526 ; 3 *Pick*. 110 ; 19 *Ves*. 186. In the case of *Crawford v. Liddel*, cited in *Jones v. Pingree*. 6 *Ves*. 580, it was held by Ld. *Roslyn* that where all the transactions were over six years, the statute might be pleaded, as well to merchants' accounts as others. And to the same effect is *Duff v. The East India Co*. 15 *Ves*. 199 ; and *Barber v. Barber*, 18 *Ves*. 286 ; and so is the rule laid down in *Beame's Pl. in equity p*. 167, and in 1 *Mad. Ch*. 98. The English decisions on this subject are ably reviewed by the learned and sagacious Chancellor *Kent* in *Coster v. Murray* before cited ; and the weight of authority pronounced to be in favor of the application of the statute to open merchants' accounts, where all the items are above six years before the commencement of the action. This conclusion was also adopted in South Carolina, in *Van Rohyn*

*v. Vincent*, 1 *McCord* 150. *Davis v. Smith*, 4 *Greenl.* 337. Thus it seems established, that if any transaction between the parties is within six years, there is no difference, in the operation of the statute, between mutual accounts and merchants' accounts; that when all the transactions are over six years, the statute may be pleaded as well to merchants' accounts as to others; and that there is no difference, as to the persons who are parties to such accounts, whether merchants or others, provided they relate to merchandize; and no distinction is admitted between foreign and inland merchants.

There being no apparent or established difference in doctrine, between merchant's accounts and mutual accounts; it is difficult to see what distinction can prevail between them in practice or pleading. The denial that accounts were merchants' would be useless and unavailing, if the case could be brought within the compass of mutual accounts; and the replication of merchants' accounts, upon that principle, would always prevail, whether the accounts were in fact between merchants or not. Again, if it be holden necessary to prove a liquidation of accounts previous to the prescription, to secure the protection of the statute, the limitation, which applies alike to mutual accounts and merchant's accounts would be entirely annulled. The limitation of the statute is *in se*, and *ipso facto*, a liquidation of accounts; and the intention of the whole statute, as expounded in a long series of decisions, appears to be, to put an end to all accounts that have been standing over six years, unless their vitality can be preserved, or a new animation imparted to them within the period of prescription. How this effect can be produced where there have been no dealings or transactions between the parties within the time, and no recognition of their existence, or any continuance of any former concerns resulting from any living and operative cause, presents a difficulty, both upon the letter and the spirit of the statute, not easily to be surmounted.

The result of an examination of all the existing authorities seems to be, that an open merchants' account, and that only, is saved from the operation of the statute. Accounts may cease to be open, and become closed, by being stated; by which operation they become closed in form; or they may become closed by the cessation of

dealings, and the operation of time; whereby they become closed in fact. But unless they remain open and current in fact, within six years, they are not protected against a plea of the statute.

2. When the statute of limitations is pleaded, it is incumbent on the plaintiff to take his case out of it, and to show that his right of action did accrue within six years, and establish his allegation; or, by his replication, to bring his case within the exception. 1 *Barnw. & Ald.* 92; 2 *Stark.* 887; 6 *Mod.* 309; 2 *Saund.* 64, *a.*; 6 *D. & E.* 192. The office of a plea in bar is to allege matter which, if true, destroys the claim made by the suit. *Beame's Pl.* 63. Such is the plea of the statute of limitations; which being pleaded, it is the business of the plaintiff to remove the bar. Hence the issue is substantially on the replication. Now in the present case the replication affirms that the matter of the action was merchants' accounts. But it has already been shown that these should not only be matters between merchants, or concerning merchandise, but also that the accounts should be open, current and continuing. Of this affirmation, there is a special denial in the rejoinder, which, not disputing what the character of the accounts might have been originally, avers that there were no open accounts between the parties within six years. The rejoinder admits that *Waite* and *Dunn* were merchants, and that they dealt together in merchandise; but it denies the legal effect of such transactions as constituting what in law are called merchants' accounts, by denying that they were open, or could be open between the parties, six years having elapsed since they had any dealings. It thus narrows the ground of the replication, by negativing the existence of one material ingredient. The surrejoinder is supplementary to the replication, which it supports and reiterates, concluding with a formal and technical traverse of the defendant's denial that the accounts were open. On this special traverse issue was taken; so that the issue is still on the original averment of the plaintiff; which it is necessary for him to make good, in order to extract his case from the statute, or to establish it as within the exception. The presumption of law, arising out of the very principle of the statute is that the subject matter of the action is, so to speak, dead; and the burden of proof is on the plaintiff to show that it is alive. His case is

McLellan *v.* Crofton.

within the statute, unless he can show that which removes it from its operation. *Gilb. Ev.* 148 ; *Bull. N. P.* 298.

3. In point of fact, the account in the case at bar was stated *Aug.* 15, 1801, by the plaintiff's intestate, who on that day struck a balance, which he carried forward to a new account, on which interest is charged. On that day, therefore, the statute of limitations attached to the account. The very basis of the charge of interest is that a sum certain was ascertained to be due ; in which case it is no longer an open and running account. *Union Bank v. Knapp,* 3 *Pick.* 96 ; 5 *Dane's Abr.* 394 ; 2 *Saund.* 124, 127, note *a* ; 1 *Ves.* 209. To constitute a stated account, it is not necessary that it should be signed by the parties. The assent of the party to be charged may be inferred from lapse of time, without objection. *Beame's Pl.* 230 ; 1 *D. & E.* 42 ; *Sherman v. Sherman,* 2 *Vern.* 276 ; *Ficket v. Short,* 2 *Atk.* 252 ; *Denton v. Skellard,* 2 *Ves.* 239 ; 1 *Mad. Ch.* 101 ; *Walden v. Sherburne,* 15 *Johns.* 409 ; *Topham v. Braddock,* 1 *Taunt.* 571. So also accounts are to be considered as technically closed by the death of either of the parties. *Bridges v. Mitchell, Gilb. Eq. Rep.* 225 ; *Story's Pl.* 91. Hence the instructions of the judge to the jury that the words " liquidated and closed" implied the operation of the minds of the parties, were incorrect ; as this principle would go to exclude the rule of law as laid down in the cases already cited. 2 *Stark. Rep.* 397 ; 3 *Stark. Ev.* 1090. The courts of equity proceed on the same rule, in refusing to decree an account after an extraordinary lapse of time. *Foster v. Hodgson,* 19 *Ves.* 179 ; *Ld. Pomfret v. Ld. Winsor,* 1 *Ves.* 482 ; *Smith v. Clay, Amb.* 645 ; 3 *Bro. Ch. Ca.* 639 ; 1 *Mad. Ch.* 99 ; 2 *Sch. & Lefr.* 639 ; *Hercey v. Dinwoody,* 4 *Bro. Ch. Ca.* 257 ; *Havenden v. Ld. Armesley,* 2 *Sch. & Lefr.* 607. The true principle of law, to be deduced from all these authorities, is, that after the lapse of a reasonable time, an accounting will be presumed ; and that this is the only probable presumption ; to raise which the lapse of even fourteen years has been held amply sufficient.

This presumption is corroborated by the evidence furnished by the plaintiff. The case shows a charge, made *Oct.* 4, 1799, as the balance of the accounts of the ship *George,* adjusted on that day,

McLellan *v.* Crofton.

which were the only matters of merchants' accounts pretended to exist between the parties; and which is, of itself, evidence of an account then stated.   And a still more important piece of evidence to this point was exhibited by the plaintiff, in the paper book in the handwriting of *Dunn,* which was a mutual statement of all their concerns up to *Feb.* 1798, a year after the capture and condemnation of the ship; and after the *spes recuperandi* was forever lost.   It was at least an account stated and rendered by *Dunn,* and received by *Waite* without objection.   On this point the instructions of the judge did not set forth the whole law to the jury, nor shed the light necessary for their direction.   They were not informed, that the paper book was of itself, and so far, evidence of an account stated; nor were they instructed as to the degree and bearing of the evidence, and its proper influence to establish that conclusion; nor in the legal presumption inseparable from this proof, in the absence of any positive evidence to the contrary.   Nor were they instructed, as it is contended they should have been, that from the mutilated condition of this piece of evidence, part of its last leaf, and perhaps others, being wanting, every presumption was to be made in favor of the defendant, against the party in whose possession it was found.   It is always incumbent on the party producing mutilated documents, to account for their want of entireness.   *Bull. N. P.* 255.   Such is the spirit of the doctrine of the *onus probandi* in *Ross v. Gould,* 4 *Greenl.* 204; 1 *Inst.* 225 *a*; *Hatch v. Hatch,* 9 *Mass.* 312; 10 *Co.* 92; 1 *Phil. Ev.* 264, 347; *King v. Castleton,* 6 *D. & E.* 236; 1 *Stark. Ev.* 370, 291; *Gilb. Ev.* 44.   If the paper book be considered as the admission of *Dunn,* as it was treated at the trial, by the plaintiff, then, on this ground, the whole should have been taken together; and for defect of the whole, the part offered should have been excluded. *Bull. N. P.* 237; *Randall v. Blackburn,* 5 *Taunt.* 245; *Kirkpatrick v. Love, Ambl.* 589; 1 *Stark. Ev.* 372.   But being admitted, inasmuch as it purported to be a statement of accounts long after the principal subject of their dealings was lost, the rule of *omnia præsumuntur rite et solenniter esse acta* was strictly applicable; and here also the jury should have been directed to presume that the lost portion of the last remaining leaf contained a final statement and liquidation

of the account. This rule has been particularly applied in favor of the perfectness of transactions, in *Colman v. Anderson*, 10 *Mass.* 105 ; *Pejepscot Proprietors v. Ransom*, 14 *Mass.* 145 ; *Blossom v. Cannon, ib.* 176 ; *Gray v. Gardiner*, 3 *Mass.* 399.

4. On the general issue, the presumption of law, arising from the lapse of twenty years, is that the debt was paid. This rule is simple, unqualified and imperative. The lapse of time holds the place of particular and individual belief. The presumption arises because there are no means of belief or disbelief. The law concludes, definitively and absolutely, that the obligor or covenantor has in that long time lost his receipts and vouchers ; or that the witnesses, who could prove the payment, are dead. The judges, as is said in *Grantwick v. Simpson*, 2 *Atk.* 144, have bound it down as an irreversible rule, that if there be no demand for money due on a bond for twenty years, they will direct a jury to find it satisfied, from the presumption arising from length of time. *Oswald v. Legh*, 1 *D. & E.* 270 ; *Henderson v. Lewis*, 9 *Serg. & Rawle*, 379 ; *Giles v. Barremore,* 5 *Johns. Chan.* 545. And so, it is contended, the jury in the case at bar should have been instructed.

5. The books of *William Waite*, and the promissory note of *Dunn* for fifteen dollars, payable to *John Waite*, with the indorsement thereon of the receipt of its amount from *William Waite*, were not admissible to support the charge of that sum as paid for *Dunn's* receipt. That the book itself is inadmissible for this purpose, even with the suppletory oath of the party, is clear from the case of *Prince v. Smith*, 4 *Mass.* 455 ; it being a case of the payment of money to a third person, and therefore in its nature susceptible of better evidence. No request of *Dunn* was proved ; without which it was an officious payment, and not recoverable. *Exall v. Patridge*, 8 *D. & E.* 308 ; *Kilgour v. Finlayson*, 1 *H. Bl.* 155 ; *Child v. Moseley*, 8 *D. & E.* 613 ; 2 *Comyn on Contr.* 151. The charge, moreover, is for money paid for *Dunn's* receipt taken up ; but the evidence offered is a promissory note. No receipt was produced ; nor any evidence offered of its loss. But if the paper were a receipt, it would not be sufficient evidence of itself, without proof of a request from *Dunn*.

6. The jury should have been directed not to allow the charge of money paid for *Dunn* to *Pierson & Thacher*. He was not discharged of the debt on their books; the credit being for *Waite's* note, to be in full of the account when paid. Nor was the note thus given a negotiable note; and therefore it was not of itself a satisfaction. Neither was it ever paid. *Banorgee v. Hovey*, 5 *Mass.* 11; *Thatcher v. Dinsmore*, 5 *Mass.* 299; *Maneely v. McGee*, 6 *Mass.* 143; *Johnson v. Johnson*, 11 *Mass.* 359. Nor was there any ground for the jury to believe it was so received; nor any evidence from which they could presume that this debt was assumed at *Dunn's* request. On the contrary, the evidence was against such presumption. *Waite*, in the most favorable light for the plaintiff, was merely the surety of *Dunn*; and as such could not call on his principal till actual payment. *Rowell v. Smith*, 8 *Johns.* 249.

7. The charge of interest, upon the plaintiff's own principles, could not be sustained, the account being treated as open and unliquidated. If it was not so, it is barred by the statute. If it was, then no interest was chargeable unless by the custom of the place. And this custom, if any existed, it was apparent from the books themselves that the parties never had adopted; and so the jury should have been instructed.

8. Touching the motion to amend the *ad damnum*, the proposed amendment is not matter of form, but of substance. 1 *Chitty Pl.* 398; 1 *Bac. Abr. tit. Amendment E*; *Bonner v. Charelton*, 5 *East* 140; *Wray v. Lister*, 2 *Stra.* 1110; *Percival v. Spencer, Yelv.* 45; *Benger v. Kortwright*, 4 *Johns.* 415. And this being true, it cannot be made after verdict. *Curtis v. Lawrence*, 17 *Johns.* 111; *Grosvenor v. Danforth*, 16 *Mass.* 74; 6 *Dane's Abr. ch.* 184, *art.* 5, *sec.* 10; *Burk v. Barnard*, 4 *Johns.* 309; *Burr v. Thomas ib.* 190; *Marriott v. Lister*, 2 *Wils.* 147; *Paine v. Bustin*, 1 *Stark. Rep.* 60; *Hoit v. Malony*, 2 *N. Hamp.* 322.

*Longfellow* and *Greenleaf*, for the plaintiff, cited the following authorities. That the balance of the ship *George's* account being carried forward, became merely an item in the account current, and so not within the statute; *Farrington v. Lee*, 1 *Mod.* 270; expounded in *Union Bank v. Knapp*, 3 *Pick.* 111. That the liquida-

tion and closing of accounts imported some joint act of the parties ; the death of one not being sufficient ; *Bass v. Bass,* 6 *Pick.* 362 ; *Webber v. Tivell,* 2 *Saund.* 125, *note* 6 ; *Truman v. Hurst,* 1 *D. & E.* 40. That merchants' accounts are not within the statute, though no item is within six years ; *Oswald v. Legh,* 1 *D. & E.* 270 ; *Catling v. Skoulding,* 6 *D. & E.* 189 ; *Jones v. Pengree,* 6 *Ves.* 580 ; *Foster v. Hodgson,* 19 *Ves.* 180 ; *Willard v. Dorr,* 3 *Mason,* 164 ; 1 *Ball & Beatty,* 119 ; 2 *Sch. & Lefr.* 632 ; 10 *Ves.* 466 ; 15 *Ves.* 496 ; 1 *Ves. & Beame,* 539 ; *Mandeville v. Wilson,* 5 *Cranch* 15 ; *Davis v. Smith,* 4 *Greenl.* 339 ; *Murray v. Coster,* 20 *Johns.* 582 ; *Styles v. Donaldson,* 2 *Dal.* 196 ; *Franklin v. Camp,* 1 *Coxe* 196 ; *Van Rhyn v. Vincent,* 1 *McCord* 310 ; *Richards v. The Maryland Ins. Co.* 8 *Cranch* 84 ; *Ballantine on Lim.* 71, 73, 81, 82. That the note of a third person, accepted in payment, is a discharge of the debt ; *Maneely v. McGee,* 5 *Mass.* 299 ; *Wiseman v. Lyman,* 7 *Mass.* 286 ; *Ellis v. Wild,* 6 *Mass.* 321 ; *Hob.* 69 *note* ; and that the maker may recover the amount, though he has not paid the note ; *Sheehy v. Mandeville,* 6 *Cranch* 311 ; *Cornwall v. Gould,* 4 *Pick.* 444 ; *Witherbee v. Mann,* 11 *Johns.* 518 ; *Gallagher v. Roberts,* 1 *Wash. C. C. R.* 320 ; *Parker v. United States,* 1 *Pet. C. C. R.* 262. That the lapse of twenty years was merely presumptive evidence of payment, liable to be rebutted by other evidence ; *Cowp.* 214 ; 3 *Dane's Abr.* 506 ; *Dunlap v. Ball,* 2 *Cranch* 184. That the jury were rightly instructed on the point of interest ; *Selleck v. French,* 1 *Conn.* 32. That the objection to the juror came too late ; and was not valid at any time ; *Jeffries v. Randall,* 14 *Mass.* 205 ; *Fellow's case,* 5 *Greenl.* 333 ; 6 *Dane's Abr.* 248. And that the motion to amend was allowable ; *Bogart v. McDonald,* 2 *Johns. Ca.* 219 ; *Stat.* 1821, *ch.* 59, *sec.* 16 ; 5 *Dane's Abr.* 436 ; 7 *D. & E.* 699 ; *Danielson v. Andrews,* 1 *Pick.* 156 ; *Haynes v. Morgan,* 3 *Mass.* 208 ; *Perkins v. Burbank,* 2 *Mass.* 83 ; *Bullard v. The Nantucket Bank,* 5 *Mass.* 99 ; *Putnam v. Hall,* 3 *Pick.* 445 ; *Williams v. The Hingham Turnpike,* 4 *Pick.* 349.

McLellan *v.* Crofton.

The opinion of the Court was delivered at the adjournment in *August* following, by

MELLEN C. J. In this case three different questions are presented to the court for decision.

1. The first is a motion on the part of the plaintiff, for leave to amend, by inserting an *ad damnum* ; through inattention none having been laid in the original writ.

2. The second is a motion at common law, for a new trial ; on the ground that one of the jurors who tried the cause was incompe-tent, for certain reasons stated in the motion on file,

3. The third is a motion for a new trial, founded on exceptions to the opinions and instructions of the judge who presided at the trial of the cause. A verdict was returned for the plaintiff for the sum of $2031,96.

We shall proceed to examine these several motions in the order in which we have arranged them.

It is a principle of law established by several decided cases, that if judgment be rendered for a sum larger than the amount of the *ad damnum*, it is, for that reason reversible on a writ of error ; and it must be reversed, unless the plaintiff will enter a remittitur of the excess. If this be done, the court will affirm the judgment for the residue. *Hutchinson v. Crossen*, 10 *Mass.* 251 ; *Grosvenor v. Dan-forth*, 16 *Mass.* 74. In the present case, the counsel for the plain-tiff, after the verdict was returned, discovered that no *ad damnum* was laid ; and anticipating the danger to which his client would be exposed by taking judgment on the verdict, in case the defendant's motions should be overruled, he very prudently made the motion to amend. The 16th section of our revised statute, *ch.* 59, has respect only to circumstantial errors or mistakes ; and it would seem that, in-asmuch as a judgment is liable to reversal, if rendered for a larger sum than the *ad damnun* alleged, the total omission, or the smallness of an *ad damnum*, cannot properly be considered as merely a cir-cumstantial error or mistake ; at least after rendition of judgment. Perhaps until judgment is rendered, it may be so considered. We are not aware of any decisions opposing this idea. Matters of sub-

stance are those essential to the maintenance or defence of an action. Circumstantial errors or mistakes are those which are in matters not essential. It will be observed that, as yet, no objection has been made by the defendant on account of the omission of the *ad damnum*, either by plea in abatement or motion ; but he filed his pleas in chief, and the cause has been tried on its merits. The declaration sets forth a good cause of action ; and the omission we are considering has not, up to the present stage of the cause, been of the least importance to either of the parties ; nor has it the remotest connexion with the justice of the case. And now, why is not the want of an *ad damnum* at this time a circumstantial error or mistake? If so, then it is a subject of amendment by the very terms of the section before mentioned. When a writ of error is brought to reverse a judgment because it exceeds the *ad damnum*, if the creditor remits the excess, this *remittitur* is considered as a species of amendment, which he has the power to make by releasing his damages down to the amount of the damage alleged ; and probably, in those cases where judgment has been reversed for excess of damages, the court would have avoided the necessity, had they been empowered in such cases to grant leave to the plaintiff to make a more advantageous amendment, by increasing the *ad damnum* to a sufficient amount ; but on error, this cannot be done. In the before cited case of *Hutchinson v. Crossen*, the court say, " The writ of error is a commission to this court to examine the record of a judgment in an inferior court, and thereupon to reverse or affirm such judgment according to law. We can only examine that record, as it is certified to us, and determine whether it warrants the judgment rendered by the other court." But the present case is not before us on error but on appeal, which opens all questions in relation to the merits of the cause on every ground. We are in the constant habit of allowing amendments in such cases ; but not in proceedings on error. At common law, if a verdict, and general damages be given, where the declaration contains several counts and one of them is bad, judgment may be arrested or reversed on error, for that reason ; but if the judge who tried the cause will certify that all the counts were for the same cause of action, or that the evidence applied only to the good

count or counts, the court, even at a succeeding term, will allow the plaintiff to amend the verdict, so as to make it applicable to the good count or counts. This is done to prevent an arrest or reversal of judgment. This is stronger than the present case. *Barnard v. Whiting*, 7 *Mass.* 358; *Barnes v. Hurd*, 11 *Mass.* 57; *Sullivan v. Halker*, 15 *Mass.* 374; *Patten & al. v. Gurney*, 17 *Mass*, 182. *Petrie v. Hannay*, 3 *D. & E.* 659, the verdict took no notice of one of the issues; and afterwards a writ of error was brought in the House of Lords. The plaintiffs there obtained a rule to show cause why they should not be allowed to amend by the judge's notes, by adding a verdict on the second plea; and the amendment was allowed. The same thing was allowed on error in the case of *Clark v. Lamb*, 7 *Pick.* 512, as to the amendment of a verdict. These decisions go further still in support of the justice of the case, after the merits have been fairly decided. In both cases the error or omission was considered as matter of form; and a more liberal principle was adopted and acted upon than was deemed proper in *Hutchinson v. Crossen*, which we have before cited. In *Sayer v. Pocock, Cowp.* 407 no issue was joined; but the cause went down to trial and a defence was made. After verdict, the party had leave to amend by adding a *similiter*; Lord *Mansfield* at the same time saying that one was ashamed and grieved that such objections remained; but by amending, the court only made that right, which the defendant himself understood to be so, by going down to trial. So also in *Grundy v. Mill*, 1 *N. Rep.* 27, a tender was pleaded, but no regular issue was joined; and after verdict, the court allowed the record to be amended, on the principle adopted in *Sayer v. Pocock*. In both these cases there was an omission of one of the parties of such a nature as to leave no question regularly presented for trial; but the error was promptly corrected; the parties having tried the cause fairly on its merits without knowing that any omission or error existed. The same observation may also be applied to this case. The omission in question must have been the consequence of mere inattention; an evident mistake of the clerk who made the writ; whereas the insertion of too small a sum by way of *ad damnum* may be the effect of misjudging or miscalculation; it

McLellan *v.* Crofton.

has not the appearance of mistake. In New York in the case of *Bogart v. McDonald*, 2 *Johns. Ca.* 219, leave was given, on motion to amend by increasing the *ad damnum.* So also in *Danielson v. Andrews*, 1 *Pick.* 156. We will, on this point, cite one case more, which seems to be a direct authority, viz. *Tomlison & al. v. Blacksmith*, 7 *D. & E.* 132. It was an action of *assumpsit* ; damages laid at £100 ; verdict for the plaintiff for the sum of £600, 9, 6. The plaintiff moved for leave to amend by increasing the *ad damnum* to £1000, and leave was granted accordingly ; but Lord *Kenyon* at the time observed "it would be going too far to make the amendment required, without sending the cause to a new trial, as the defendant might have gone to trial, relying that no more than £100 could be recovered." Such was the reason for granting the amendment upon the above terms in that case. But in the present case, to impose such terms would be useless and absurd ; for the defendant has exerted his full strength and contested every item of the plaintiff's account, without measuring his defence by the amount of the *ad damnum* ; for there was none. He did not, and could not make any such calculations ; and for the most conclusive reason ; for it is not even pretended that he had any idea of the omission of an *ad damnum* till after the close of the trial. But it is contended, that as the plaintiff inserted no *ad damnum*, the court of Common Pleas had no jurisdiction of the cause, and, therefore, that this court has none ; and that although no plea to the jurisdiction was given, the defendant may still avail himself of the objection, as it appears on record. If we are referred to the record, we must look to the whole of it. An account of some thousands of dollars is annexed to the writ and the verdict which the jury have returned, has established the plaintiff's claim to a large amount, shewing that legal jurisdiction over it appertained to the court of Common Pleas, and now belongs to this court. It would be matter of regret, if not of reproach to our laws and to the administration of them, if such a motion could not be sustained. We entertain no doubt on the point. The plaintiff, therefore, has leave to amend, by inserting a sufficient *ad damnum*, and the clerk will enter, that such leave is granted and that the amendment is made accordingly.

McLellan v. Crofton.

The motion to set aside the verdict and grant a new trial on account of the asserted disqualification of *Nathan Winslow*, one of the jurors, is the next subject for our consideration. It is proved that he is the son-in-law of *Samuel F. Hussey ;* who is a creditor of *Waite*, the intestate, and whose claim has been allowed by commissioners ; and from the evidence reported by the judge relating to the subject of the motion, it appears that the juror was wholly ignorant of the existence of *Hussey's* claim, and of course it could have had no influence upon his mind in the decision of the cause. And from the same reported evidence it appears that the agent of the defendant, Mr. *Sherwood*, who attended the trial, had been distinctly informed, before that time, of *Hussey's* claim ; and one, at least, of the defendant's counsel knew the fact ; but it seems it escaped the recollection of them all. These facts certainly do not countenance the motion, which is addressed to the discretion of the court. If a juror be drawn more than twenty days before the sitting of the court, it is a good reason for dismissing him ; but the objection comes too late after verdict, though not till then known to the party objecting. *Amherst v. Hadley*, 1 *Pick.* 43. So if a *talesman* sits in a cause for which he was not returned, the objection cannot be sustained after verdict. *Howland v. Gifford*, 1 *Pick.* 43 *note.* So if a person, not by law qualified to sit in the trial of a real action, where the tenant claims compensation for his improvements, because he holds lands by a possessory title in the same manner, does actually sit as a juror ; a new trial cannot be granted on that account, though the disqualification was not known till after verdict. *Jeffries v. Randall*, 14 *Mass.* 205. So if a *talesman* be returned by the sheriff, in an action where his deputy is a party. *Walker v. Green*, 3 *Greenl.* 215. The utmost which can be urged by the defendant's counsel is, that they forgot to make the objection in season by way of challenge ; nor was it intimated to the court, and then not in the hearing of any of the jury, till near the close of a long trial. But the fact is, there was no disqualification on the part of the juror, and there could not have been any till he had been informed of *Hussey's* claim. We see no grounds for disturbing the verdict on account of any reasons set forth in the motion. The

great objects of a trial by jury have been attained ; the facts have been submitted to them ; and they have impartially returned their verdict upon those facts, under the influence of no motives that we have the right to believe or even suspect to be improper.

We therefore pass to the consideration of the third question, or motion founded on the exceptions. The exceptions alleged are numerous, and have respect to almost all the proof introduced, and all the decisions and instructions of the presiding judge ; and, of course, the opinion of the court may be extended to an unusual length in the examination of this branch of the cause.   Several of the exceptions, however, and the subjects with which they are connected, may be embraced in one view ; because one general answer may apply to them, and the same principles govern our decision in respect to them.   But in this examination we shall arrange the exceptions, so as in the first instance to dispose of the minor questions, and then proceed to a distinct and full consideration of the more important.

The exception against the admission of the day book of the intestate is entirely destitute of legal foundation. It was admitted under such instructions and restrictions as are usual in similar cases ; the principles regulating this species of proof are very familiar, and the citation of authorities is unnecessary.   The exception to the admission of those charges in the leger entered in the hand writing of *Dunn*, as evidence to the jury, we consider as equally unsupported ; they were admissions on the part of *Dunn*, and, as such, competent proof, upon the plainest principles of law.

As to the charge for cash paid to *John Waite*, we cannot pronounce the instructions of the judge to be incorrect, in the peculiar circumstances of the case.  The evidence, such as it was, was left to the jury for their consideration.   They were informed that the book alone was not legal proof of the charge, but was admissible, and might be considered in connexion with the other proof.   *John Waite* had for many years been dead ; the receipt on the back of the note given by *Dunn*, was in *John Waite's* writing, and the note was produced on trial, by the plaintiff, in whose possession we should expect to find it after it was paid by the intestate.   The numerous instances of small sums charged by him as paid for *Dunn*, and proved

McLellan v. Crofton.

in the usual manner, as we see by the account annexed to the writ ; the age of the transaction, and other circumstances above mentioned, we think furnished good grounds for the jury to infer the truth and fairness of the charge.

The admission of the paper book, containing sundry accounts in the hand writing of *Dunn*, as mentioned in the exception, was perfectly correct. The statements therein made were confessions of *Dunn* deliberately made ; and, being legally in evidence, it was the province of the jury to examine it, and draw their own conclusions from its contents ; and with respect to the supposed loss of some of its leaves, either by accident or design, and the inferences to be drawn from its appearance, they were all subjects exclusively within the province of the jury ; and the instructions of the judge to that effect were in our opinion correct and proper. A similar answer may be given to the exception alleged against the direction of the judge touching the statement of the account of *October* 1799, and that appearing on the account annexed to the writ. The question was, whether it was a statement or adjustment made by both parties, that is, by *Waite* and *Dunn* ; or only a statement by the intestate only, or some person employed in drawing off the account. This was a subject also to be examined and decided by the jury ; and it was very properly submitted to their determination.

The next exception relates to the instruction of the judge as to the note given by the intestate to the assignees of *Pierson & Thatcher*. The jury have decided that the charge originally made against *Dunn*, was transferred and made against *Waite* by the consent of *Dunn* ; and that afterwards *Waite* gave the note in question ; and that the assignees received it in full satisfaction of the debt due originally from *Dunn*, and afterwards, by transfer of the charge, due from *Waite*. It has been urged in the argument that there was no sufficient or satisfactory proof that the transfer of the charge and the assumption of the debt by *Waite* were authorised by any request on the part of *Dunn*. On this head all the evidence is not particularly detailed in the exception ; but if it had been, we are not inquiring whether the verdict in this particular is against evidence or the weight of evidence. There is no motion before us for a new trial on such

ground.   This same answer may also be considered as applying to the decision of the jury upon several of the particulars we have been examining.   It was admitted that the note has never been paid to the assignees ; and it is contended by the counsel for the defendant, that the sum for which the note was given cannot be recovered in this action.   The instruction was that it might be recovered, and the jury have allowed it.   It seems to be a well settled principle that a surety cannot maintain an action against the principal or a co-surety for reimbursement or contribution, until after payment of the debt by him, or what is equivalent thereto.   2 *Stark Ev.* 99.   And this principle will not be changed by such surety's having given to the creditor collateral security for the debt.   The reason is obvious ; for such additional security does not in the least impair the obligation on the part of the principal or co-surety ; the original liability still remains, and each may be called on for payment, as he might have been before.   By the payment of the debt by the surety, it is admitted that he at once acquires a right of action against the principal or co-surety. The reason is, that by such payment, all the obligors or promissors are discharged from their original contract.   This discharge of the principal and co-surety is the consideration of the promise of immediate reimbursement or contribution which the law raises.   Now, in the case before us, *Waite* has relieved *Dunn* from his original liability to *Pierson & Thatcher,* by assuming the debt himself, at his request, and thus subjecting himself to liability ; and *Dunn*, in his life time, was as effectually discharged from responsibility by this arrangement, as he would have been if *Waite* had paid the debt in cash to the assignees ; for the jury have found that the note was accepted in full discharge of the debt originally due from *Dunn* ; and the object of this suit is to collect a sum of money to be appropriated to the benefit of *Waite's* creditors ; to pay, in whole or in part, among other debts of *Waite*, the very note in question.   Authorities on this point are not wanting.   In *Barclay & al. v. Gouch*, 2 *Esp.* 571, it was decided by Lord *Kenyon*, that the plaintiffs having at the request of the defendant given their note for a debt which he owed, was in law to be considered as payment in respect to the defendant ; and the plaintiffs had a verdict for the amount for which the note

was given, though it had not been paid. A new trial was moved for at the next term and refused. This case is mentioned by the court in that of *Douglas v. Moody & al.* 9 *Mass.* 553, with approbation, and the correctness of the decision recognized. The same court also, in the case of *Cornwall v. Gould,* 4 *Pick.* 444 confirmed the same doctrine. There the plaintiff had indorsed a note made payable to him by one *Kenniston,* at the request of the defendant, and the same was discounted for his benefit at a bank in *Georgia,* and he received the money. After one or two renewals of the note, the plaintiff took it up, and paid it by giving a new note, signed by himself and indorsed by one *Clafflin.* On a count for money paid, the plaintiff was allowed to recover the amount, though it never had been paid to the bank, except by the new note. The ground of the decision was that *Kenniston,* the original debtor and maker of the first note, was completely discharged. In accordance with the above decisions is the opinion of the court in New York in *Witherby v. Mann,* 11 *Johns.* 516. The facts were almost precisely similar to those in *Barclay v. Gouch.* The principal case which seems to shake that of *Barclay v. Gouch* is *Taylor v. Higgins,* 3 *East* 169, decided five years afterwards. The opinion was given after a few moments conversation in court, on a motion to hold the defendant to special bail. The motion was not sustained, on the principle that the plaintiff had only given his bond, in satisfaction of a former bond signed by himself and the defendant, and as his surety, but had never paid the same. In *Cornwall v. Gould,* the court did not consider *Barclay v. Gouch* as an overruled case. If, however, the English cases should be viewed as balanced, the weight of authority seems clearly in favor of the correctness of the principle as laid down by Lord *Kenyon,* and sanctioned by the court. In a previous case this court has adopted and decided on the same principle.* On the facts and authorities before us, relative to this part of the cause, we perceive no incorrectness in the direction given to the jury. To the above point we would also refer to the cases cited by the plaintiff's counsel in *Cornwall v. Gould.*

The next objection in the order in which we have arranged them

* See *Dole v. Hayden,* 1 *Greenl.* 152.

relates to the instructions of the judge as to the presumption of payment, arising from lapse of time, or rather the circumstances relied on as repelling that presumption. The general principle of law is very plain ; it is also perfectly clear that many circumstances may exist and which are proper subjects for the consideration of the jury, tending to account for delay, and remove the presumption of payment, and, of course, the ground of defence ; such, for instance, as the debtor's acknowledgment of the non-payment of the debt—payment of a part of the debt—payment of interest—frequent demand of payment—obstacles to a recovery, arising from the interruption of the course of justice, as was the case during the war of our revolution. In *Dunlap v. Ball*, 2 *Cranch* 180, *Marshall*, *C. J.* says, " the principle upon which the presumption of payment arises from the lapse of time, is a reasonable principle, and may be rebutted by any facts which destroy the reason of the rule." Insanity and poverty of the defendant were held sufficient to rebut the presumption of payment. So the poverty and absence from the State, of the debtor, were held sufficient. 5 *Dane* 506, *art.* 3, *sec.* 1. The instruction given was that mere poverty of *Dunn* did not rebut the presumption ; but that the debtor's absence from the country, during the twenty years, was sufficient to control and repel the presumption. This principle was expressly decided in the case of *Newman v. Newman*, 1 *Stark. R.* 101, in language the most unequivocal ; and the opinion was not questioned. It appears by the exceptions that *Dunn* left this country in the fall of 1799, in indigent circumstances, and returned to Ireland, the place of his nativity, where he continued to reside till his death in 1805 ; and that no administration was granted on *Waite's* estate till the year 1822. Though no reference was made to these facts particularly in the instructions to the jury, yet they were in the case, and are before our eyes. So that there was poverty, as well as absence from the country, to repel the presumption, according to one of the cases cited in *Dane*. In the case of *Fladong v. Winter*, 19 *Ves.* 196, it was decided by Lord *Eldon* that the presumption of payment of a bond, after twenty years, might be repelled by evidence that the obligor had no opportunity or means of paying ; and in support of the latter, the chancellor stated

that such he understood to be the principle of the decision in the case of *Wynne v. Waring*, which had a short time before been decided. As it regards opportunity of paying, the want of administration on *Waite's* estate till 1822, was considered by the judge a sufficient reason for excusing the defendant from the payment of interest from the time of *Waite's* death until the grant of administration. This circumstance seems to furnish the same reason for the non-payment of the principal as of the interest. On the whole, we see no ground for setting aside the verdict on account of any misdirection of the judge touching the question involved in the exception thereto on this point. The only remaining question on the exceptions, growing out of the facts in evidence on the general issue, relates to the instruction on the subject of the allowance of interest. This may be disposed of in a moment. The claim to interest was placed on the ground of mercantile usage and the adoption of this usage in the transactions between the intestate and testator; and the question of usage was very properly submitted to the jury for decision.

We now proceed, in the last place, to the consideration of the questions arising on the exception to the judge's instruction relative to the defence upon the plea in bar, and the construction of that part of the statute of limitations which was presented by the issue.

Though the pleadings are protracted to a surrejoinder before an issue to the country is formed; yet the simple and single question put in issue is whether " all accounts, concerns and transactions between the plaintiff's intestate and the defendant's testator were liquidated and closed at the time of, and for more than six years before, the commencement of the plaintiff's action." This fact the defendant in his rejoinder affirms, and the plaintiff in his surrejoinder denies, and issue is taken on the traverse.

This part of the cause demands and has received our particular attention, and been subjected to a patient investigation. By a review of the numerous cases to be found in our law books upon the subject, we perceive that the exception in the statute as to merchants' accounts has created doubts and been the cause of a series of contradictory decisions by able judges, both in England and in this country, in courts of chancery and courts of law; and the learned

Chancellor *Kent* has observed that the true and definite meaning of the exception seems at this day unsettled in Westminster Hall. It does not appear that the points presented in this case have been settled in more than three of the states in the union, viz. Massachusetts, Pennsylvania and South Carolina. Under these circumstances we are called upon in this action to give a construction of it and pronounce our judgment, which must decide the rights of the parties, and be our guide for the future. In doing this, we must avail ourselves of all such lights as can be derived from the opinions of learned courts and learned judges in England and in the United States. As the reported decisions cannot be reconciled, we know of no other safe course to pursue, than to search for the intentions of those who framed the statute of limitations, as originally passed in England, of which ours is almost an exact copy, and thus ascertain, as well as we are able, how far the various constructions which different parts of it have received are in unison with those intentions, and how far they have a tendency to defeat them. In doing which, it will be found, unless we labor under mistake and misapprehension, that the restraining parts of the act, and the exception of merchants' accounts, have frequently been construed on principles in opposition to each other ; and that too much latitude of construction has led to that doubt and perplexity which now exist.

The language of the exception in the statute of limitations of 21 *Jac.* 1, *cap.* 16, and of our statute on the subject is this, viz. " other than such accounts as concern the trade of merchandize between merchant and merchant, their factors or servants." Whatever the " accounts" are which were intended to be described in the above exception, they are in express terms excluded from the operation of the restraining clause ; and as effectually as if they had been contained in a proviso at the end of the section, declaring that as to such accounts the statute should have no operation or effect whatever. Hence the first inquiry is, what we are to understand by the above mentioned descriptive word " accounts." We apprehend there is no difficulty in giving a satisfactory answer to this question. It has been correctly answered by a course of decisions. By that word are intended open or current accounts, as distinguished from

stated accounts. Stated accounts are those which have been exam‑ined by the parties, and where a balance due from one to the other has been ascertained and agreed upon as correct. The case of *Sandys Ex'r. v. Blodwell,* Sir *W. Jones,* 401 shews this. The parties, *Freeman,* (the testator) and *Blodwell,* disputed as to the balance ; and *Freeman* died before any was agreed upon. The justices to whom the subject was referred, certified that the account was not barred, because it was not finished ; and also because it was an account between merchant and merchant. In the above case the statute of limitations was pleaded. Now, what is the true reason on which the above mentioned construction has been given so uni‑formly, making the distinction between open and stated accounts ? We apprehend it is simply this ; while an account remains open, each party is depending for the recovery of the balance he may consider due to him, upon the promise which the law raises on the part of him who is indebted, to pay that balance ; but when the parties have stated, liquidated and adjusted the accounts, and thus ascertained the balance, it ceases to be an account ; it has lost the peculiar character and attributes of an account ; what was before an implied promise to pay what should be found to be a reasonable sum, by such liquidation and stating of the account, at once becomes an express promise to pay a sum certain. Such an adjustment will support a count on an *insimul computassent.* Such balance is a result in which previously existing accounts have become merged, and lost their character and existence. This view and this reason‑ing seem clearly to be sanctioned by decided cases. Thus in *Mar‑tin v. Delboe,* 1 *Mod.* 70, the court say, " accounts within the stat‑ute," (that is, within the exception of the statute) " must be under‑stood those that remain in the nature of accounts ; now this is a sum certain." So in *Farrington v. Lee,* 1 *Mod.* 268, the plaintiff de‑clared on an *insimul computassent* ; the statute of limitations was pleaded, and merchants' accounts replied ; to which there was a de‑murrer. *Scroggs J.* observed, " As this case is, there is no account betwixt the parties ; the account is determined, and the plaintiff put to his action on the *insimul computassent,* which is not within the ex‑ception. In *Webber v. Tivill,* 2 *Saund.* 124, *Jones* for the defen‑

43

dant, (whose reasoning was fully confirmed and adopted by the court) observes, " Here it appears that the account for £55, 11, 7 was stated and agreed ; and then it immediately became a debt certain, being ascertained by the account ; and for this debt, after the account was stated, the plaintiff might have brought his action of debt, which would without doubt have been limited to six years by the statute." If the view we have thus taken, and the course of reasoning we have pursued, are correct ; and if we have ascertained the true meaning of the language of the exception in the statute, it would seem to follow, that nothing but a statement, liquidation and adjustment of accounts by the parties, their agents or representatives, could take merchants' accounts out of its protection, and place them under the power and operation of its limitations. Whether the inference thus stated is the correct one, is the question to be considered. On this point *dicta* and decisions are. numerous and contradictory. Before examining them, it may be well to observe here that by the course of the pleadings it is admitted that the accounts in question in this cause are those which " concern the trade of merchandize between merchant and merchant." This obviates some questions which have arisen in several of the decisions in the courts of law and equity. The inquiry then is, upon the general ground,

I. Whether the death of both or either of the original parties, *Waite* and *Dunn,* has operated so as to subject the accounts to the limitations of the statute.

II. Whether the cessation of dealings and termination of charges, more than six years before the commencement of this action, has produced the above effect on the accounts.

III. Whether the foregoing questions, are, or either of them is, open to examination by the defendant, upon the special issue joined by the parties.

As to the first question. Independently of all authority, it seems to the court to be a difficult task, by any reasoning from analogy, to establish the principle that the death of one of two merchants, who for years have been dealing together, should, in legal contemplation, have the same effect upon their mutual accounts as a liquidation and adjustment of them. An adjustment implies the operation and as-

sent of two minds, at least ; because, in its very nature, it is a contract of itself. How then can the death of such merchant give such sanctity to his books and accounts, as to render them as conclusive evidence of their truth and accuracy, and of the correctness of the balance appearing thereon to be due him, as if that balance had been struck by both, and agreed to by the survivor ? But if the death of A. one of the merchants, is to have such an effect on his books and accounts, why should not the death of B. the other merchant, immediately afterwards, have the same effect on his books and accounts ? And if the apparent balance on A's books and accounts essentially vary from that appearing on B's books and accounts, what is to be done in such case ? Both cannot be true and correct ; to which is credit to be given ? We cannot respect a doctrine leading to such consequences and such confusion : nor do we perceive that such a principle is established by decided cases. The case mentioned in 5 *Dane's Abr. ch.* 161, *art.* 5 *sec.* 4, as having been decided in Massachusetts in 1800, of which notice is also taken in *Story's* pleadings, 91, is so loose, and stated with so much brevity, that the grounds of the decision are not very distinctly perceived. The learned author has merely said, " Held that in account current between merchants, the act does not begin to run till settlement, or till one dies ; because mutual charges on their books, is a mutual admission of their debts." Now, the reason assigned has no necessary connexion with merchants' accounts more than with any other species of accounts ; nor with the accounts of deceased more than living merchants. The principle stated is well settled and very familiar ; in respect to which the case of *Catling, Ex'r. v. Skoulding & al.* 6 *D. &. E.* 189, is a leading one. This court has adopted the same in *Davis v. Smith,* 4 *Greenl.* 337. We do not perceive, from the foregoing brief note, that the death of one of the merchants had any influence with the court ; but we are rather led to a different conclusion, from the assignment of mutuality of accounts as a reason which guided them. *Ballantine,* in his treatise on the statute of limitations, page 76, observes that " if between merchant and merchant dealings betwixt them have ceased for several years, and one of them die, and the surviving merchant bring a bill for an account, the court will not de-

cree an account, but leave the plaintiff to his remedy at law. This does not prove that such death or cessation of dealing has changed the nature of the account, but only that it may induce a court of equity to make no decree on the subject. By leaving the plaintiff to his remedy at law, we are left to draw the conclusion that such a remedy is considered as existing, notwithstanding such decease. In support of the above observations, *Ballantine* cites a case from 1 *Vern.* 456, where there had been a cessation of dealing, and one of the parties had died; yet as there had been a long acquiescence without a settlement, the bill was dismissed, and the plaintiff left to her remedy at law. So also in the case of *Sandys v. Blodwell,* before cited, the plaintiff's testator was one of the merchants whose accounts were the subject of investigation. The statute was pleaded to the bill filed, but the death of the testator was not considered as having the effect which is contended for in the case at bar. So also in the above case of *Catling Ex'r v. Skoulding & al.* ; the defendants pleaded the statute of limitations, and the plaintiff replied a new promise ; and contended that there was such mutuality of accounts, and some charges within six years, as would bring the case within the exception in the statute. The defendant's counsel objected that the case did not come within the exception, and if it did, it should have been replied specially, as was the case in *Webber v. Tivill,* where there was a replication of merchants' accounts ; and Lord *Kenyon* admitted the validity of the objection, as to the necessity of a special replication, where there is no item within six years ; but considered in that case such a replication unnecesary, as there were such items. If the testator's death had subjected the account to the limitations of the statute, would counsel have urged the necessity of such a replication, when it would have been needless, and Lord *Kenyon* have approved it ? We apprehend that, in a legal point of view, the only effect produced on the accounts of two merchants, dealing together, by the death of one of them, is, that it necessarily causes a cessation of dealing, and terminates the accounts. This brings us to the consideration of the second question.

The second inquiry is whether a cessation of dealings is equivalent and amounts to a liquidation and closing of the accounts, and that

McLellan v. Crofton.

after the lapse of six years, it subjects them to the statute of limitations, and bars a recovery. According to the view which we have taken of the exception in the statute, and its fair construction, we cannot avoid the same difficulty in arriving at the conclusion, by any process of reasoning, that such cessation has the effect contended for by the defendant's counsel, which we encountered in considering the first question. Lapse of time seems to furnish no proof of an agreement of the parties as to the truth of an apparent balance ; certainly no more proof after the expiration of six years, than at the end of five years. Still we are aware that the books of reports, especially many of the English books, contain a number of cases in which the exception in the statute has been the subject of consideration and construction, in various forms, and on various principles ; yet it remains unsettled, as we have before observed.

We will now proceed to a brief examination of the principal cases on the subject ; commencing with those which have been considered as supporting the defence upon the point now in question. Most of these have been collected by Chancellor *Kent* in *Coster & al. v. Murray*, 5 *Johns. Ch.* 522, as well as by *Ballantine* and *Angell*. The collection by Mr. *Angell*, being the most recent, is the most full and satisfactory. The first case we notice is *Webber v. Tivill* before cited, which was *assumpsit* ; one count being for monies had and received and goods sold, and another on an *insimul computassent* ; plea, the statute of limitations ; replication, merchants' accounts ; and demurrer. The court gave judgment for the defendant ; but it was expressly stated to have been given on the ground that the parties had stated the account and agreed on the balance. It was not an open account. No one doubts the correctness of this decision. The case of *Bridges v. Mitchell*, *Gilb. Eq. R.* 224, merely states the undisputed principle, that the exception in the statute applies only to open accounts. The case of *Welford v. Liddel*, 2 *Ves.* 400, was a bill for an account, and the statute was pleaded ; but it does not appear to have been an account between merchant and merchant. The plea was allowed. Lord *Hardwicke*, in giving his opinion, recognizes the distinction between running accounts, and accounts closed and concluded, and the application of the statute to those of the latter

description; but the case seems to establish nothing as to the point under consideration, it not appearing that they were merchants' accounts. If they were, then the decision is in direct opposition to one made by this same lord chancellor in the year 1737; in which he declared his opinion that between merchants, an open account was within the exception, and protected by it, though there had been no dealings within six years. The case of *Martin v. Heathcote* 2 *Eden* 169, is in point for the defendant. Lord Chancellor *Northington*, in that case, which was a bill filed for an account, and the statute pleaded, observed that merchants' accounts, after six years total discontinuance of dealing, were as much within the statute as other accounts. In *Jones v. Pengree*, 6 *Ves.* 580, a case was cited by counsel as having been decided by Lord *Roslyn*, between *Crawford* and *Liddel*, upon principles in accordance with those on which Lord *Northington* proceeded. The above case of *Jones v. Pengree* was decided on a point foreign to the one we are now considering. In *Duff v. E. India Company*, 15 *Ves.* 198, the question was discussed, and, as Chancellor *Kent* observes, treated as an open question; but the cause was decided on another ground. In *Barber v. Barber* 18 *Ves.* 286, to a bill for an account, the statute was pleaded. All dealings had ceased more than six years before the filing of the bill; and Sir *William Grant*, the master of the Rolls, decided that the case was within the statute. The cases of *Ramchander v. Hammond*, 2 *Johns.* 200, and *Cogswell v. Dolliver*, 2 *Mass.* 257, relate only to the well known distinction between open and stated accounts, and the effect of mutual accounts. The court of appeals of South Carolina, according to the decision in *Van Rhyn v. Vincent*, 1 *Mc Cord* 150, may be considered as an authority in favor of the defendant. In the case of *Union Bank v. Knapp*, 3 *Pick.* 96, the court intimate an opinion that open accounts are barred after six years; but the same court have since expressly overruled that case, as will be noticed particularly hereafter. The opinion and statements of *Maddock* and *Beame*, can only be founded on the contradictory decisions of the English courts. Distinguished judges and chancellors have entertained and pronounced with firmness contending opinions; and it would be singular indeed if such great and excellent

men, and such eminent jurists as Sir *Samuel Romilly* and Chancellor *Kent* should not have drawn their own conclusions, and reposed with confidence in the opinions they had formed ; opinions, most certainly entitled to the highest respect.    In the case of *Coster & al. v. Murray*, 5 *Johns. Ch.* 522, though the learned chancellor intimated his opinion that the weight of authority seemed in favor of applying the statute to open merchants' accounts, when the last item is more than six years before the commencement of the suit ; yet he did not decide the cause on that ground ; nor was the decree affirmed in the court of errors upon that ground, but expressly on another.    See 20 *Johns.* 576.    We believe we have noticed all the authorities relied on by the defendant's counsel, except those which we shall consider in reviewing the cases cited in support of the action.

We will now proceed to the examination of those authorities which have established or recognized a different construction of the exception in the statute relating to merchants' accounts, and on which the counsel for the plaintiff place their reliance.

The first is the case of *Sandys v. Blodwell*, which has been twice cited before.    The facts of the case we shall not repeat, but merely state that the justices certified that an open and unsettled account between two merchants was not barred by the statute, though more than six years old when the action was brought.    The next is the decision of Lord *Hardwicke* in 1737, referred to by Lord *Eldon* in *Foster v. Hodgson*, 19 *Ves.* 180.    The next is the before cited case of *Catling Ex'r. v. Skoulding*, in which Lord *Kenyon* states the principle to be that " where there is no item of account at all within six years, the plaintiff, to the plea of the statute, must reply specially, as was done in *Webber v. Tivill*, in order to bring his case within the exception.    In that case the plaintiff replied that " the accounts wholly concerned the trade of merchandize."

The next is the case of *Foster v. Hodgson*, above cited, in which Lord *Eldon* considers the question as still open and unsettled in England, notwithstanding the several decisions which we have mentioned, as well as some others ; but as the bill did not expressly state the accounts then before him, to be accounts between merchant and merchant, his lordship did not undertake to decide this long contes-

ted question. The principle as contended for by the counsel for the plaintiff is plainly, though incidentally, recognized by this court in the case of *Davis v. Smith*, 4 *Greenl.* 337. The decision was on another ground.

The principle contended for by the plaintiff seems to have been conceded to be correct in the case of *Godfrey v. Saunders*, 3 *Wils.* 94. The defendant's second plea was that there was not any open account between the plaintiff and defendant, at any time within six years before the commencement of the action. The plaintiff replied to this plea that the account concerned trade and merchandize, which was never adjusted or settled between them. The defendant rejoined that the account did not concern trade and merchandize, and thereupon issue was joined to the country. Now why did not the counsel for the defendant demur to the replication, if accounts between merchants, though open and unadjusted, are barred by the statute of limitations ?

The next case is that of *Stiles* plaintiff in error *v.* *Donaldson*, 2 *Dal.* 264. In an action on bond, the defendant filed in offset an account between the plaintiff and himself as merchants, and concerning the trade of merchandize. The account had remained unliquidated and unsettled for seventeen years. The plaintiff contended that it was barred by the statute of limitations, by such long delay and acquiescence. The court decided that the account was not affected by the limitations of the act, and affirmed the judgment below.

We next proceed to the case of *Mandeville & Jameson*, plaintiffs in error, *v. Wilson*, 5 *Cranch* 15. This was an action of *assumpsit* for goods sold and delivered; pleas, the general issue, and statute of limitations; replication to the latter plea, that the money " became due and payable on an account current of trade and merchandize had between the said plaintiff and defendants as merchants, and wholly concerned the trade of merchandize." The defendants rejoined that "in *January* 1799 the partnership between *Mandeville* and *Jameson* was dissolved, and all accounts between them ceased ; and that since that time no accounts have existed or been continued between the plaintiff and the defendants." The plaintiff surrejoined that the goods were sold and delivered before *January* 1799 ; de-

murrer, and joinder. The opinion of the court delivered by *Marshall C. J.* was—" that the exception in the statute applied as well to actions of *assumpsit* as actions of account ; that it extended to all accounts current which concern the trade of merchandize between merchant and merchant; that an account closed by the cessation of dealings between the parties, is not an account stated ; and that it is not necessary that any of the items should come within the five years ; that the replication was good, and the rejoinder bad." The judgment below, which was for the plaintiff, was affirmed. The statute of limitations in Virginia, which governed the court in the above case, bars actions of *assumpsit* on accounts, &c. after the lapse of five years, instead of six years as with us. The judgment rendered in this case goes the full length of establishing the doctrine laid down by the presiding judge at the trial, and puts a distinct and decisive negative upon the defence, and removes all the grounds on which it has been placed. Indeed the facts are essentially the same as those in the case at bar. In both, there was a cessation of dealings and termination of accounts, and that was all ; in neither was there any statement, liquidation or adjustment of them whatever by the original parties, their agents or representatives. In the case of *Murray & al. v. Coster & al.* 20 *Johns.* 576, *Vielie*, one of the senators, goes into a broad investigation of the numerous cases on the construction of the exception in the statute, as Chancellor *Kent* had before done, on the trial before him in chancery. The senator was fully of opinion that the accounts and concerns between the parties related to the trade of merchandize between merchant and merchant, and on that account were within the exception ; and he concludes his remarks on this branch of the cause with these emphatic words : " I consider such of the English decisions as contravene the construction I have given to the statute, as little better than judicial usurpation of legislative authority."

In commenting on the case of *Union Bank v. Knapp*, cited by the defendant's counsel, we noticed that it had been overruled by the same court. Since the trial of this cause, the case of *Bass, ex'r. v. Bass*, has been published in 6 *Pick.* 362, in which it was explicitly decided that merchants' accounts, as described in the statute of

44

limitations, are excepted from the operation of that statute; and in another report of the same cause, appearing in 8 *Pick.* 187, the court say that upon a revision of the above decision, they are satisfied with its correctness.

From the foregoing review of the decisions on the questions immediately before us, we cannot persuade ourselves that the weight of authority is in favor of the construction for which the counsel for the defendant have so ably, anxiously and strenuously contended; especially when we consider that in the last English decision which we have seen, Lord *Eldon* expressed his opinion that the question was then open and unsettled in that country; and considering also that where the courts in our own country have professed to decide it, (with the exception of the court of appeals in South Carolina, which inclined strongly the other way) the decision has been unequivocally against such a construction; and one of those courts is the supreme tribunal of the nation; one peculiarly entitled to the highest consideration and respect of all other courts of law. It may be proper to observe that the learned Chancellor *Kent*, in his review of the cases on the subject in *Coster & al. v. Murray*, (in which he expresses his own opinion,) has omitted the cases we have cited from *Wilson, Dallas*, and *Cranch.*

We have now done with the citation of authorities, and shall conclude with some general observations respecting the statute of limitations, and the construction that has been given to the different parts of it, and the changes of opinion which have taken place at different periods in regard to it. In the early part of this opinion we alluded to this subject. In the beforementioned case of *Martin v. Heathcote*, Lord *Northington* decided that " merchants' accounts, after six years discontinuance of dealing, were as much within the statute as any other accounts;" and in *Barber v. Barber*, Sir *William Grant* adopted and proceeded upon the same principle. In both these cases the distinction between merchants' accounts and others is abolished. With all due respect, we must say that this doctrine, if admitted, virtually amounts to a complete judicial repeal of the exception in the statute, and is in direct opposition to its declared intention, and to the unequivocal language in which the intention is

expressed. It may be useful to take a glance at the different principles on which the different parts of the section of the act in question have been construed. For a long time we may perceive in the reports an evident effort on the part of judges to save actions from the effect of its limitations, though clearly embraced in the language of those limitations; and at the same time to narrow the exception, and refuse protection to accounts and actions, distinctly embraced in the language of the exception. In both the foregoing instances the tendency and object of such decisions seems to counteract, and, to a certain extent, explain away both provisions of the statute; to rescue accounts of one kind from the embraces of it, and subject those of another kind to its power and paralysing effect, though expressly placed beyond its control. In the case of *Bell v. Morrison*, 1 *Pet.* 351, *Story J.* in delivering the opinion of the court, observes that "it has often been a matter of regret, in modern times, that in the construction of the statute of limitations, the decisions had not proceeded upon principles better adapted to carry into effect the real objects of the statute; that instead of being viewed in an unfavorable light, as an unjust and discreditable defence, it had received such support as would have made it, what it was intended to be, emphatically a statute of repose." There was, at times, much ingenuity discovered in construing doubtful or unmeaning expressions into promises or acknowledgements; but as to merchants' accounts, they were treated with little kindness or indulgence. As they are expressly excluded from the operation of the statute, we cannot perceive any thing but the pure magic of construction which has been or can be prayed in aid, to place such accounts, while open and unliquidated, under the limitations of the act, and on the same level with all other kinds of accounts. There seems to be as much reason for regret on account of this construction of the exception, as was expressed by the court in the case of *Bell v. Morrison* for that which the statute itself, as to its limitations, had unfortunately received; and we apprehend there is as much reason and good sense in correcting opinions which may be found to be erroneous as to one part of the statute as another; the object should be to ascertain the true intent and mean-

ing of both, and then with plainness and independence give them what we believe to be their intended operation and effect.

In respect to the restraining part of the statute, this has already been done. By a series of decisions, in England and in this country, former errors have been corrected ; and it is now perfectly settled that nothing short of an unqualified, unambiguous and explicit acknowledgement of an existing debt, by words or acts, will take a case out of the limitations of the statute ; and to preserve consistency in the application of principles, it is, in our humble judgment, proper to go back to the plain language of the exception, and rest contented with giving to it its legitimate operation. Under the influence of these impressions, and guided by the authorities and reasoning which we have presented to view in the investigation of this cause, we have been conducted to the conclusion, that the accounts between *Waite* and *Dunn* cannot, on legal principles, be considered as barred by the limitations of the act, by reason of the cessation of dealings between them more than six years before the commencement of the present action ; nor by the death of one or both of them, as mentioned in the pleadings. In the state of the facts, and in our application of legal principles to those facts, it is of no importance to decide on whom the burden of proof was imposed by the form of the issue. The affirmative, however, seems to be on the part of the defendant. This leads us to the last point to be considered.

This third point, namely, whether the general question which we have been so long examining under the two former heads is open to examination on the special issue joined, has become of minor importance, in consequence of our decision of those questions, in the manner above stated ; because, if we were dissatisfied with the instructions given to the jury, as to the effect of the special form of the issue, as being exclusive of the general question, still it would be no ground for setting aside the verdict, when the legal principle and legal result would be the same under any form of the issue. But we do not perceive any incorrectness in the instructions given on the point. The question on the pleadings was whether the accounts had been liquidated and closed more than six years before the commencement of the action. And, as the judge observed, it was the duty of

the defendant to establish the truth of the affirmative to the jury; this he undertook to do. A liquidation of an account cannot mean any thing less than a statement and adjustment of it by the parties interested; and this question, whether the account had been so liquidated and closed, was a question of fact, and properly referred to the jury for decision; whereas, the question, whether a cessation of dealings for more than six years, or the death of one of the parties, subjects merchants' accounts to the limitations of the statute, is a question of law; and the pleadings in the case disclose all the facts necessary to present those points to the view of the court. Upon examining the cases which have been cited and commented upon, in the course of this opinion, it will be found that no such special issue was joined as in the case at bar. In the cases in the courts of law, the discontinuance of dealings was alleged in some part of the pleadings; and the effect of it for more than six years, became the subject of inquiry and decision upon demurrer; and in chancery cases, sometimes the fact appeared on the bill, and sometimes in the answer; but no case has fallen under our observation which presents an issue of fact on the contested question of liquidation and adjustment. The parties in this case have formed their own issue; but the jury have discovered no evidence which could authorize them to find that issue in favor of the defendant.

The great degree of interest which this cause, in all its stages, has excited on the part of those immediately engaged in it, and the unusual length of the argument of the defendant's counsel, as well as the number of questions made on the exceptions and in the ample discussion of all the merits disclosed to us, have led the court to a full examination of the whole subject in all its bearings; and after a long and wearisome investigation of facts and authorities, and careful attention to the arguments of counsel, we are all of opinion that the defendant has not succeeded in sustaining either of his motions; and the consequence is that there must be

*Judgment on the verdict.*